IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LESTER ERWIN CARROLL, IV, §
§
Petitioner, §
§
V. § CIVIL ACTION NO. H-08-440
§
NATHANIAL QUARTERMAN, DIRECTOR, §
TEXAS DEPARTMENT OF CRIMINAL §
JUSTICE, CORRECTIONAL §
INSTITUTIONS DIVISION, §
§
Respondent. §

**MEMORANDUM AND ORDER GRANTING
RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

Pending in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2254 is

Respondent's Motion for Summary Judgment (Document No. 16) against Petitioner's Federal

Application for Writ of Habeas Corpus (Document No. 1). Having considered Respondent's Motion

for Summary Judgment, the claims raised by Petitioner in his Federal Application for Writ of Habeas

Corpus, the state court records, and the applicable law, the Court ORDERS,[1] for the reasons set forth

below, that Respondent's Motion for Summary Judgment (Document No. 16) is GRANTED, and

Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) and Motion for

Evidentiary Hearing (Document No. 11) are DENIED, and this § 2254 proceeding is DISMISSED

with prejudice.[2]

---

[1] On May 27, 2008, pursuant to the parties' consent, this case was transferred by the District
Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 23.

[2] Petitioner's Motion to Strike Respondent's Evidence in Support of his Motion for Summary
Judgment (Document No. 25) is DENIED. Petitioner complains in that motion that Respondent has
provided the Court with "unauthenticated" evidence, but has not specifically identified which
documents or records should be excluded or stricken as unauthenticated.

I.       **Introduction and Procedural History**

Lester Erwin Carroll IV ("Carroll") is currently incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division, as a result of his conviction for robbery.  Carroll was charged by Indictment with that offense on April 1, 2003,  in the 262nd District Court of Harris County, Texas, Cause No. 944193.[3]  The Indictment also alleged two prior felony convictions for enhancement purposes.  On May 1, 2003, a jury found Carroll guilty of the robbery offense, found the prior convictions alleged in the Indictment to be true, and sentenced Carroll to life imprisonment.  Carroll appealed to Texas' First Court of Appeals, which affirmed his conviction on July 1, 2004.  *Carroll v. State*, No. 01-03-00444-CR.  Carroll's petition for discretionary review was refused by the Texas Court of Criminal Appeals on April 13, 2005, and his request for rehearing was denied on June 8, 2005.

Carroll has filed two state applications for writ of habeas corpus.  The first, filed on February 6, 2006, was dismissed upon Carroll's request on June 28, 2006.  The second, filed on April 3, 2006, was denied by the Texas Court of Criminal Appeals on September 19, 2007, on the findings of the state trial court without a hearing.  This § 2254 proceeding, filed on or about February 4, 2008, followed.

---

[3] Prior to being indicted in Cause No. 944193, Carroll faced robbery charges in Cause No. 897234, arising out of the same incident.  Cause No. 897234 was dismissed and Carroll was reindicted in Cause No. 944193.

II.   **Claims**

Carroll raises three claims in this § 2254 proceeding:[4]

1.   that his trial counsel, Ricardo N. Gonzalez, forged Carroll's signature on a April 2, 2003, form requesting appointed counsel, and thereby denied him his Sixth Amendment right to the effective assistance of counsel;

2.   that his was denied his right to represent himself, and denied substituted counsel despite his repeated complaints about appointed counsel's performance; and

3.   that his appellate counsel was ineffective for failing to challenge trial counsel's performance.

Each of these claims was either raised by Carroll in his direct appeal or in his second state application for writ of habeas corpus.  Respondent argues in the Motion for Summary Judgment that no relief is available to Carroll on any of these claims because the state courts' rejection of his claims

---

[4] Carroll set out six claims in his § 2254 application – the same six claims he raised in his second state application for writ of habeas corpus:

1.   that "trial counsel committed the felony criminal act of forgery in order to represent Petitioner against his expressed wishes";

2.   that his Sixth Amendment right to effective assistance of counsel was "violated when counsel criminally victimized Petitioner";

3.   that "the trial court violated Petitioner's right to self-representation as guaranteed by the U.S. Constitution";

4.   that "the trial court violated Petitioner's Sixth and Fourteenth Amendment rights when it failed to conduct a thorough inquiry into whether Petitioner could make a substantial showing for substitute counsel";

5.   that "the trial court violated Petitioner's Sixth and Fourteenth Amendment rights for substitute counsel"; and

6.   that Petitioner's Sixth Amendment right to effective assistance of appellate counsel was violated when appellate counsel failed to raise a significant and obvious issue on appeal".

Carroll's two complaints about trial counsel's alleged forgery are considered herein as one claim. In addition, Carroll's separate complaints about the trial court's denial of his request for substitute counsel and the denial of his request to proceed pro se will be considered by the Court together.

is not contrary to, or an unreasonable application of, clearly established Federal law as determined

by the Supreme Court, and is not based on an unreasonable determination of the facts.

## III.   <u>Standard of Review</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim

presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state

proceeding, federal review is limited.  28 U.S.C. § 2254(d) provides:

> (d)   An application for writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> > (1)   resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in the
> > State court proceeding.

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly

established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court]

cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*,

538 U.S. 634, 123 S. Ct. 1848, 1853 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406

(2000)).  A state court decision involves an "unreasonable application of" clearly established Federal

law "if the state court identifies the correct governing legal principle from the Supreme Court's

decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529

U.S. at 413.  But "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'" *Price*, 538 U.S. at 641 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25, 123 S. Ct. 357 (2002)).

As for factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000).  In addition, the state court's factual determinations carry a presumption of correctness; to rebut them, the petitioner must present clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1) (2000)." *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. granted in part,* 124 S.Ct. 46 (2003).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding.  Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Woodford v. Visciotti*, 534 U.S. 19, 27 (2002) ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments and authorizes federal-court intervention only when a state-court decision is objectively unreasonable.").  Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative.  In addition, the correctness of the state court's decision is not

5

determinative.  As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535 (2003), "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted).  Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning. *Neal v. Puckett*, 286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004).

## IV.   <u>Discussion</u>

The main focus of Carroll's argument relative to all of his claims is that his trial counsel, Ricardo N. Gonzalez, forged his signature on a April 2, 2003 form requesting appointed counsel. According to Carroll, Gonzalez knew that he did not want him as his attorney and knew that he wanted to represent himself.  In addition, Carroll complains that the trial court improperly refused to dismiss Gonzalez as his trial counsel, and violated his Sixth Amendment right when it refused to allow him to represent himself.    All of Carroll's claims were rejected by the state courts on the merits.  For the reasons set forth more fully below, the Court concludes that the state courts' adjudication of Carroll's claims is not contrary to or an unreasonable application of clearly established Federal law, nor is it  based on an *unreasonable* determination of the facts in light of the evidence presented in the state court proceedings.

6

**A.      Forgery/Ineffective Assistance of Trial Counsel**

In his first claim, Carroll complains that his trial counsel, Ricardo N. Gonzalez, forged his signature on an April 2, 2003, form requesting appointment of counsel.  Carroll maintains that Gonzalez used that forgery to victimize him and prevent him from representing himself.

With respect to Carroll's claims of forgery, Gonzalez filed a highly detailed affidavit in the state habeas corpus proceeding, in which he first recited the procedural history of the case,  and then addressed Carroll's claims.  Gonzalez stated as follows in his affidavit:

> Lester Erwin Carroll was arrested on December 19, 2001, and charged with Robbery in Cause #897234.  The case was assigned to the 209th District Court of Harris County.  Mr. Carroll first appeared [in] the 209th District Court on December 21, 2001.  On that day he signed a paupers document and requested an appointed attorney.  Charles Hinton was appointed to represent Mr. Carroll.  Charles Hinton continued as Mr. Carroll's court appointed attorney until November 13, 2002.  On November 13, 2002, Mr. Carroll's cases were transferred to the 262nd District Court and on November 13, 2002, I was appointed to represent Mr. Carroll.
>
> While the Robbery case was pending on the 209th District Court, Mr. Carroll escaped from the Harris County Jail on October 15, 2002.  Mr. Carroll was captured and returned to jail.  On October 17, 2002, Charles Hinton was appointed to represent Mr. Carroll on the Escape charge Cause #927459.
>
> Due to possible witness testimony from members of the 209th District Court personnel, the cases were transf[erred] to the 262nd District Court.  On November 13, 2002, the cases appeared on the docket of the 262nd District Court.  I was assigned to represent Mr. Carroll on November 13, 2002 on both cases.  Mr. Carroll refused to sign the paupers document and I wrote down "Refuses to sign" and initialed it.  The cases were reset to November 25, 2002.  On November 25, 2002, the cases were reset to December 9, 2002.  I went to the Harris County Jail to discuss the cases with Mr. Carroll on December 8, 2002.  We talked for one and a half hours regarding his defenses to these cases.  At that point he told me he wanted to keep me as his attorney on both cases.  We went to court on December 9, 2002 and Mr. Carroll was taken in front of Judge Mike Anderson and Mr. Carroll told Judge Anderson that he wanted to keep me as his court appointed attorney.  Mr. Carroll withdrew his intent to proceed pro se and the cases were reset to January 10, 2003.

On the reset form of December 9, 2002, with Mr. Carroll's signature on it, he rejected the plea offer of 20 years on the Robbery and 30 years on the Escape. The Assistant District Attorney, Terence Windham, withdrew the 20 and 30 year offers and stated that the state was going to re-indict the Robbery case (case #897234) and add two (2) enhancement paragraphs. The effect of this being that the new range of punishment if Mr. Carroll was found guilty was 25 years to life in prison. The case was reset to January 10, 2003. On January 10, 2003, the case was reset to January 23, 2003. On January 22, 2003, I went to the Harris County Jail to talk to Mr. Carroll regarding his defense. He told me that as to the Robbery his defense was "mistake of fact. He said that a woman was out to shoot and kill him and he thought that the complaining witness (the victim) in the Robbery case was the woman. He said that this woman carried her gun in her purse. In order to prevent her from shooting him, he decided to snatch her purse so that he could remove the gun from the purse. Ms. Carrigan would not let go of the purse and Mr. Carroll hit or pushed Ms. Carrigan to the ground. As the purse snatching was taking place quite a few witnesses saw what was happening and came to Ms. Carrigan's aid. Mr. Carroll ran down an alley and was cornered and apprehended by all those witnesses. While the crowd surrounded and kept Mr. Carroll on the ground, the witnesses found several items in Mr. Carroll's pockets that were taken from Ms. Carrigan's purse. The police arrived and arrested Mr. Carroll.

Mr. Carroll developed the defensive theory. He asked his sister to come to court to testify that a woman was trying to kill Mr. Carroll. I spoke to his sister and she did come to court ready to testify. Mr. Carroll decided that his sister should not testify in court. Mr. Carroll decided not to testify on his own behalf. Mr. Carroll's mother was present at the trial and Mr. Carroll decided that she should not testify on his behalf.

The result of the trial was that the jury believed Ms. Carrigan and all the five (5) or six (6) witnesses that saw the robbery and chased and captured Mr. Carroll. The witnesses were regular citizens that were working in that area and heard Ms. Carrigan's screams and saw the robbery as it was taking place.

At the punishment phase of the trial, Mr. Carroll stipulated into evidence that he had been convicted of fifteen (15) prior criminal cases involving twenty-five (25) incidents of criminal activity which includes multiple counts within one (1) cause number. During the punishment phase of the trial, evidence was introduced and admitted as to how Mr. Carroll escaped from the Harris County Jail during the pendency of the original Robbery case.

The jury set the punishment for Mr. Carroll at life in prison. During the time that Mr. Carroll committed this robbery he was on parole on a federal conviction. The assistant district attorney made a motion to cumulate this life sentence (stack)

onto the federal prison sentence that Mr. Carroll was presently serving.  Judge Mike Anderson granted the motion and signed the Order to Cumulate.

In a letter dated February 12, 2003, Mr. Carroll admitted to Judge Mike Anderson that although initially he asked to proceed pro se, he decided to withdraw his motion to proceed pro se.  Mr. Carroll decided to have me represent him.  Mr. Carroll filed a motion to proceed Pro Se on March 13, 2003, which Judge Mike Anderson denied on March 14, 2003.

On April 1, 2003, Mr. Carroll was reindicted on the Robbery case.  The new cause number was 944193.  This new indictment added a second paragraph by which the State could prove their case.  It also added the two (2) enhancements which meant that if Mr. Carroll was found guilty of the Robbery, and the two (2) enhancements were proved to be true, Mr. Carroll's range of punishment would be no lower than twenty-five (25) years in prison to life in prison and a $10,000 fine.

On April 2, 2003, I was re-appointed to continue as Mr. Carroll's attorney on the Robbery case.  On April 4, 2003, the state filed a motion to dismiss the original Robbery (Cause #897234) because it was refiled as cause #944193.  The motion was granted on the same day.

Mr. Carroll filed a motion to recuse Judge Mike Anderson from presiding over these cases.  On April 8, 2003, Judge Anderson declined to recuse himself and set it for a recusal hearing.  The hearing was held on April 14, 2003, in front of Judge Debbie M. Strickland where she DENIED Mr. Carroll's motion to recuse Judge Anderson.  The escape charge (cause #944192) was dismissed on May 1, 2003 because Mr. Carroll was convicted of Robbery.

Court resets and appointment forms show that I never signed for Mr. Carroll. I would write refuses to sign, defendant not in court, in custody, etc.  The reason that Mr. Carroll was not brought up to court was because he was a high escape risk.

Mr. Carroll decided to use "mistake of fact" as his defense and he had a witness at his trial ready to testify that Ms. Carrigan closely resembled the female that was out to kill him.  During the state's presentation of their case at trial, Mr. Carroll decided not to put on a defense after the state rested.  Mr. Carroll decided not to testify on his own behalf.  I zealously represented Mr. Carroll, but I was not able to create a reasonable doubt on cross-examination of the state's witnesses.  The jury found Mr. Carroll guilty.

Mr. Carroll told Judge Mike Anderson he decided to keep me as his court appointed defense attorney and I worked very hard to represent Mr. Carroll.  The fact

that he was found guilty and given a life sentence does not diminish that fact[.]  I was his attorney and I tried my best to win his case.

I was <u>not</u> found guilty of committing an act of forgery by the Commission for Lawyer Discipline.  I was found to have violated Rule 1.03(b) (failing to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation) of the Texas Disciplinary Rules of Professional Conduct, Article X, Section 9, State Bar Rule.

I <u>never</u> committed any act of forgery.

The Commission for Lawyer Discipline never made a finding /nor established that the Paupers Affidavit of April 2, 2003 was forged.  In my opinion, the commission dismissed that allegation.

On two (2) occasions, Mr. Carroll asked Judge Mike Anderson to allow him to proceed pro se.  Mr. Carroll, on his own, decided to withdraw his first pro se motion and agreed to allow me to represent him.  On his second motion to represent himself filed on March 13, 2003, Judge Mike Anderson denied the Defendant's motion on March 14, 2003.  From that date on, Mr. Carroll willingly cooperated with me in preparing his defense on both cases.  Mr. Carroll is the one who wanted to use the mistake of fact defense.  I continued to represent Mr. Carroll because I was his court appointed attorney and because Mr. Carroll wanted me to represent him.

Mr. Carroll was taken to court on December 9, 2002 and was taken in front of Judge Mike Anderson.  Mr. Carroll told Judge Mike Anderson that he wanted to keep me as his court appointed attorney.  Mr. Carroll withdrew his intent to proceed pro se.  In a letter dated February 12, 2003, Mr. Carroll admitted to Judge Mike Anderson that although initially he asked to proceed pro se, Mr. Carroll decided to withdraw his motion to proceed pro se.  Mr. Carroll worked with me in developing a theory to his defense and also advising me which witnesses we needed for his defense.  His witnesses were present during trial and they were ready to testify.  Mr. Carroll chose not to use his witnesses after watching and listening to the Assistant District Attorney put on their case in chief.  All the State's witnesses saw Mr. Carroll take the victim's purse by force (the victim was screaming) and several of these witnesses held him until the police arrived.  Mr. Carroll and I worked together to put on the best defense possible.  Mr. Carroll chose not to testify at the trial.

Judge Mike Anderson denied Mr. Carroll's Motion to proceed pro se on March 14, 2003.

*Ex Parte Carroll*, WR,311-02 at 150-153.   Carroll, who filed his state application for writ of habeas corpus under penalties of perjury, contested Gonzalez's statements about the forgery of the April 2, 2003, form requesting appointed counsel.  *See id.* at pp. 2-43.

The state trial court in the state habeas corpus proceeding, presided over by the same judge who presided over Carroll's trial, found the contents of Gonzalez' affidavit to be true and rejected Carroll's forgery claim(s).  *Id.* at 164-167.[5]  The Texas Court of Criminal Appeals adopted those findings and conclusions as its own when it denied Carroll's state application for writ of habeas

---

[5] The state courts' findings of fact in the state habeas proceeding are as follows:

1.      The Court finds that the facts asserted in the affidavit of Ricardo Gonzalez are true and that the affidavit of Ricardo Gonzalez is credible.  *See June 26, 2007 Affidavit of Ricardo Gonzalez.*
2.      The Court finds, based on the credible affidavit of Ricardo Gonzalez and official court records, that Gonzalez represented the applicant in the primary case, cause number 944193, in the 262nd District Court of Harris County, Texas.  *See June 27, 2007 Affidavit of Ricardo Gonzalez.*
3.      The Court finds, based on the credible affidavit of Ricardo Gonzalez, that the Commission for Lawyer Discipline did not find Gonzalez guilty of committing an act of forgery.  *See June 27, 2007 Affidavit of Ricardo Gonzalez.*
4.      The Court finds, based on the credible affidavit of Ricardo Gonzalez, that Gonzalez never admitted to an act of forgery.  *See June 27, 2007 Affidavit of Ricardo Gonzalez.*
5.      The Courts unpersuasive the applicant's claim that Gonzalez forged the applicant's signature on the April 2, 2003 Paupers Affidavit in order to criminally victimize applicant by representing applicant against his expressed wishes.
6.      The Court finds, based on the credible affidavit of Ricardo Gonzalez, that applicant requested pro se representation on two occasions; applicant withdrew the first and the judge denied the second on March 14, 2003.  *See June 27, 2007 Affidavit of Ricardo Gonzalez.*
7.      The Court finds, based on the credible affidavit of Ricardo Gonzalez, that applicant expressed to the judge his desire to keep Gonzalez as his attorney and withdraw his motion to proceed pro se in court on December 9, 2002 and via letter to the judge dated February 12, 2003.  *See June 27, 2007 Affidavit of Ricardo Gonzalez.*
8.      The Court finds, based on the credible affidavit of Ricardo Gonzalez, that from March 14, 2003 on, applicant willingly cooperated with Gonzalez in preparing his defense and applicant wanted Gonzalez to continue to represent him.  *See June 27, 2007 Affidavit of Ricardo Gonzalez.*

*Ex Parte Carroll*, No. WR 64,311-02, at 164-165.

corpus on the findings of the state trial court without a hearing. *Id.* at cover.   The state court findings are not, given the evidence presented, unreasonable.   Moreover, there has been no clear and convincing evidence presented by Carroll to rebut the state courts' factual findings. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.   The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").   Given the evidence in the record, which supports the state courts' factual findings, no relief is available to Carroll on his claim that Gonzalez forged his signature.

Even if Carroll's forgery claims could withstand dismissal on factual grounds, no relief would be available to Carroll in any event because Carroll cannot show that he was prejudiced in any respect by counsel's performance.   Claims of ineffective assistance of counsel are generally measured by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).   Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had.   *Id.* at 687.   Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689.   The prejudice element requires a petitioner to " show that there is a reasonable probability that, but for counsel' s unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.   A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief.   *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Here, even if Carroll could show that he did not sign the April 2, 2003, form, and that Gonzalez was somehow involved in the signing of that form on his behalf, Carroll would not be entitled to any relief in this proceeding on a claim of ineffective assistance of counsel. There is, upon this record, with the substantial evidence against Carroll, no reasonable probability that the result of the trial would have been different in the absence of the April 2, 2003 form requesting appointed counsel. The record shows that Gonzalez was, prior to the case being re-indicted, appointed counsel for Carroll despite the fact that Carroll had refused to sign the form requesting appointed counsel. *See Ex Parte Carroll*, WR 64,311-02 at 222. Moreover, the record reflects that Carroll wanted counsel – just not Gonzalez. Because, as set forth below, Carroll had no right to appointed counsel of his choice, and because there has been no showing that the result of the trial would have been different in the absence of the April 2, 2003 form, or if another attorney had been appointed in Gonzalez' stead, prejudice does not exist on this record. Accordingly, the Texas courts' denial of Carroll's forgery/ineffective assistance of counsel claim(s) is not contrary to or an unreasonable application of clearly established Federal law, nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**B.    Self Representation**

In his next claim, Carroll complains that the trial court refused his request to dismiss Gonzalez as his counsel, refused to allow him to represent himself, and failed to hold a hearing, as required by *Faretta v. California*, 422 U.S. 806, 819 (1975), on his request that he be allowed to represent himself.

The Sixth and Fourteenth Amendments grant the accused personally the right to make his own defense. *Faretta v. California*, 422 U.S. 806, 819 (1975).  In order to undertake self representation, a defendant must first clearly and unequivocally assert his right to self representation.  *Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir. 1982); *see Faretta*, 422 U.S. at 835.  The defendant must also knowingly and intelligently waive his right to counsel. *Faretta*, 422 U.S. at 835.   In order to knowingly and intelligently waive the right to counsel, courts must make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with his eyes wide open.'" *Id*.

Here, Carroll's main complaint in his direct appeal was that the trial court erred, and denied him his Sixth Amendment right to represent himself.  In rejecting that claim, Texas' Court of Appeals wrote:

> In his first issue, [Carroll] contends that the trial court erred in denying his motion to represent himself at trial.  The State contends that [Carroll] abandoned his motion to proceed pro se and waived his right to self-representation.  The Sixth Amendment of the federal constitution guarantees both the right to counsel and the corresponding right to self-representation. *Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 2533 (1975); *Hathorn v. State*, 848 S.W.2d 101, 122-23 (Tex. Crim. App. 1992); *see also Hatten v. State*, 71 S.W.3d 332, 334 (Tex. Crim. App, 2002) (noting that *Faretta* rights triggered when accused contests guilt); TEX. CODE CRIM. PROC. ANN. Art. 1.05 (Vernon 1977) (recognizing right of accused to be heard by himself, through counsel, or both).

> A defendant who initially asserts his right to appear pro se, but later abandons the right by inviting participation of counsel, waives his right to represent himself. *See McKaskle v. Wiggins*, 465 U.S. 168, 182, 104 S.Ct. 944, 953 (1984) ("A defendant can waive his *Faretta* rights); *Funderburg v. State*, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986) (citing *McKaskle*, 465 U.S. at 182, 104 S.Ct. at 953); *see also* TEX. CODE CRIM. PROC. ANN. art. 1.14 (Vernon Supp. 2004) ("Waiver of Rights").  The record must adequately reflect that a defendant waived his right to self-representation after asserting it, but proof of waiver of self-representation is not subject to as stringent a standard of proof of waiver of the right to counsel. *Funderburg*, 717 S.W.2d at 642 (citing *Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982)).   A record

14

sufficiently demonstrates that a defendant waived his right to proceed pro se if it reasonably appears to the court that the defendant abandoned his initial request to represent himself. *Funderburg*, 717 S.W.2d at 642 (quoting *Brown*, 665 F.2d at 611). Mere acquiescence to a trial court's unmistakable denial of his request to represent himself is not a waiver of a defendant's right to self-representation. *Id.* (citing *Brown*, 665 F.2d at 612).

The only motion to proceed pro se that appears in the record is [Carroll's] March 13, 2003 motion. Although a hearing on [Carroll's] motion was required on receipt, in order for the trial court to admonish [Carroll] about the dangers of self-representation, the record does not show that the court conducted a hearing on [Carroll's] March 13, 2002 motion. *Id.* at 642; *see also Faretta*, 422 U.S. 806 at 835, 95 S.Ct. at 2541 (holding that if defendant properly asserts right to self-representation, then record must show knowing and intelligent waiver of right to counsel after being made aware of dangers and disadvantages of self-representation.). Although the trial court denied [Carroll's] March 13, 2002 motion to proceed without conducting the required *Faretta* hearing, the trial court's failure to hold the required *Faretta* hearing is not error if we determine that [Carroll] thereafter abandoned his request to proceed pro se. *See Funderburg*, 717 S.W.2d at 642.

Within the first two weeks after the trial court refused to permit [Carroll] to proceed pro se, [Carroll] took inconsistent actions concerning whether he would represent himself despite the trial court's ruling. He first filed a motion requesting that new counsel replace Gonzalez, but, a few days later, filed a motion to recuse the trial judge in which [Carroll] designated himself as acting "pro se." Although these actions may not have clearly indicated whether [Carroll] continued to wish to proceed pro se, [Carroll's] actions that followed unequivocally reflect his wish that appointed counsel represent him.

The record shows that [Carroll] affirmatively requested representation by counsel on April 2, 2003, when [Carroll] signed a document, under oath, in which he stated that he was financially unable to hire an attorney and was petitioning the court to appoint counsel to represent him. In addition to this sworn request for appointed counsel that followed [Carroll's] request to proceed pro se, the record repeatedly shows that [Carroll] wished to be represented by counsel. The April 8 and April 11, 2003 correspondence to the trial court lodged complaints about Gonzalez, but also affirmed that [Carroll] sought substitute counsel and, therefore, continued representation by counsel. [Carroll's] documents show no intent to proceed pro se as an alternative to [Carroll's] continued dissatisfaction with Gonzalez. Likewise, [Carroll's] April 17, 2003 motion for continuance shows that he desired a continuance so that his attorney – and not [Carroll] himself – could better prepare for trial, and [Carroll] and his attorney each signed the motion requesting that the jury assess [Carroll's] punishment. Finally, [Carroll] not only voiced no wish to represent himself

15

at his jury trial, but also did not complain about Gonzalez's trial performance at any time during the trial.

Because the record shows that [Carroll] affirmatively abandoned his request to proceed pro se, we conclude that [Carroll] waived his right to represent himself. *See Funderburg*, 717 S.W.2d at 642 (quoting *Brown*, 665 F.2d at 611). The communications filed with the trial court after [Carroll] requested appointed counsel reflect a continuing desire to proceed to trial represented by counsel and thus underscore [Carroll's] having abandoned his initial intent to represent himself. As in *Funderburg*, [Carroll] did not merely acquiesce to the trial court's decision, but took affirmative steps, by requesting appointment of counsel, to consciously, deliberately, and voluntarily relinquish, and thus waive, his known right to proceed pro se. *See id.* at 641.

We overrule [Carroll's] first issue.

*Carroll v. State*, No. 01-03-00444-CR, at 7-10. Because the record clearly shows, as found by the Texas Court of Appeals, that Carroll did more than merely acquiesce to representation by counsel, and that he effectively abandoned his request to represent himself, the Texas courts' rejection of this claim[6] is not contrary to or an unreasonable application of clearly established Federal law nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

As for Carroll's complaints that the trial court would not dismiss Gonzalez as his counsel, it has long been clear that "[t]he right to counsel guaranteed by the Sixth Amendment does not include the right to counsel of [a defendant's] choice." *See also Green v. Johnson*, 160 F.3d 1029, 1045 (5th Cir. 1998) (a defendant "does not enjoy a constitutional right to the counsel of his choice"), *cert. denied*, 525 U.S. 1174 (1999); *United States v. Breeland*, 53 F.3d 100, 106 n.11 (5th Cir. 1995)

_____

[6] The Texas Court of Criminal Appeals' denial of Carroll's Petition for Discretionary Review is viewed as having been based on the same reasons set forth by the Texas Court of Appeals. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground").

(dismissing as frivolous appellant's claim that the district court erred in refusing to dismiss his court-appointed counsel); *Richardson v. Lucas*, 741 F.2d 753, 756 (5th Cir. 1984) ("Although the sixth amendment's right to counsel in criminal cases is absolute, an accused's right to a particular counsel is not."); *Johnson v. Lynaugh*, 662 F. Supp 1513, 1519 (E.D. Tex. 1987) (The "right to be represented by counsel in criminal proceedings does not include a right to court-appointed counsel of one's choice").  In addition, the Sixth Amendment does not even guarantee that a defendant have or develop a meaningful relationship with his court-appointed attorney.  *Morris v. Slappy*, 461 U.S. 1, 14 (1983).

Like Carroll's claim that he was denied his Sixth Amendment right to represent himself, the Texas Court of Appeals rejected Carroll's related claims that the trial court erred in denying his motion for substitute counsel without first holding a hearing on that motion.  In rejecting those claims, the Texas Court of Appeals wrote:

> In his second issue, [Carroll] contends that the trial court erred by not conducting a hearing on [Carroll's] motion for substituted counsel.  His third issue challenges the trial court's decision to deny that motion.
>
> Once the court has appointed an attorney to represent an indigent defendant, the defendant has been afforded the protections provided under the Sixth and Fourteenth Amendments and Article 26.04 of the Texas Code of Criminal Procedure, regarding counsel. *Malcom v. State*, 628 S.W.2d 790, 791 (Tex. Crim. App. [Panel Op.] 1982); *Watson v. State*, 95 S.W.3d 342, 344 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd); Tex. Code Crim. Proc. Ann. art. 26.04 (Vernon Supp. 2004) ("Procedures for Appointing Counsel").  A defendant who is displeased with his appointed counsel must bring the matter to the attention of the trial court and has the burden of proof to show that he is entitled to a change of counsel.  *Malcom*, 628 S.W.2d at 791; *Watson*, 95 S.W.3d at 344; *Garner v. State*, 864 S.W.2d 92, 98 (Tex. App.–Houston [1st Dist.] 1993, pet. ref'd).  If the defendant makes an adequate showing, certain circumstances, for example, a claim of a conflict of interest, may warrant the trial court's exercising its discretion to discharge previously appointed counsel and appoint substitute counsel.  *Garner*, 864 S.W.2d at 98-99.

*Failure to Hold a Hearing*

[Carroll's] second issue challenges the trial court's ruling on [Carroll's] motion for substituted counsel without conducting a hearing on that motion. Because nothing in the record shows that [Carroll] requested a hearing, [Carroll] did not preserve error. *See Malcom*, 628 S.W.2d at 792 ; Tex. R. App. P. 33.1(a)(1); *see also Garner*, 864 S.W.2d at 100 (noting that trial court is not required to hold hearing sua sponte on motion for change of counsel).

We overrule [Carroll's] second issue.

*Failure to Order Substituted Counsel*

In his third issue, [Carroll] contends that the trial court erred by not appointing substituted counsel to replace [Carroll's] trial counsel. We review the trial court's ruling for abuse of discretion. *See Burgess v. State*, 816 S.W.2d 424, 428-29 (Tex. Crim. App. 1991). An indigent defendant's right to counsel does not compel the trial court to appoint counsel agreeable to the accused. *King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000); *Garner*, 864 S.W.2d at 98. Likewise, the defendant may not manipulate his right to counsel so as to obstruct the orderly procedure in the court or interfere with the fair administration of justice and must, in some circumstances, yield to the general interest of prompt and efficient justice. *See King*, 29 S.W.3d at 566; *Garner*, 864 S.W.2d at 98.

Because [Carroll] was not entitled to his personal choice of appointed counsel, he was required to accept the attorney appointed by the trial court unless (1) [he] waived his right to counsel and chose to represent himself or (2) [he] adequately demonstrated why appointment of new counsel was necessary. *See Garner*, 864 S.W.2d at 98. The first option does not apply, given that [Carroll] requested appointed counsel on April 2, 2003 and acted in conformity with that request thereafter. Accordingly, [Carroll] was required to accept his appointed counsel unless he sufficiently demonstrated an adequate reason to appoint substituted counsel. *See id*; *see also Burgess*, 816 S.W.2d at 428-29 (stating that "eleventh-hour" request for change of counsel by accused who refuses to waive counsel and does not assert right to self-representation requires accused to proceed to trial with existing lawyer).

About a month before the scheduled jury trial was to begin, [Carroll] began complaining repeatedly to the trial court about Gonzalez's performance in representing [him]. On March 13, 2003, [Carroll] filed his motion to proceed pro se, claiming that he was forced to choose between self-representation and ineffective assistance of counsel. On March 24, 2003, [Carroll] filed a motion for substitute

counsel, in which he complained again about Gonzalez's performance. On March 27, 2003, [Carroll] filed a motion to recuse the trial judge, in which he stated that he was acting "pro se" because he was unable to communicate with Gonzalez. On April 8, 2003, [Carroll] sent a letter to the court in which he requested appointment of substitute counsel to replace Gonzalez and claimed that Gonzalez was providing ineffective assistance. On April 11, 2003, [Carroll] filed a motion to enter the written communications between [himself] and Gonzalez into the court record, including seven requests that [Carroll] made to Gonzalez. On April 17, 2003, [Carroll] filed a motion for continuance in which he stated that Gonzalez was inadequately prepared for trial.

[Carroll's] complaints generally alleged that (1) communication between [Carroll] and appointed trial counsel had broken down, and counsel did not confer adequately with [him], (2) counsel did not investigate certain unspecified factual and legal issues, (3) counsel did not permit or facilitate [Carroll's] participation in his defense by requesting access to the law library, providing copies of case law that [Carroll] requested, or requesting a bail hearing (4) counsel did not pursue [Carroll's] preferred defense strategy, and (5) counsel filed pretrial motions without [Carroll's] knowledge.

[Carroll] contends that the circumstances of this case show that communication had completely broken down with appointed counsel and alternatively contends that the circumstances created an irreconcilable conflict that led to an unjust verdict. Aside from cases from several federal circuit courts that have not been adopted in Texas, [Carroll] relies on only one Texas case, *Melendez v. Salinas*, 895 S.W.2d 714 (Tex. App.–Corpus Christi 1994, orig, proceeding), in which Melendez, the indigent defendant, had been accused of attempted murder. Id. at 715. The court of appeals conditionally granted mandamus relief to compel the trial court to conduct a hearing on Melendez's request for substituted counsel because the defendant had demonstrated a "substantial complaint about his appointed counsel's representation." *Id.* The court of appeals reached this conclusion because Melendez demonstrated that the attorney appointed to represent him had conferred with him only briefly and only three times, which totaled only 20 minutes overall, during his 16-month incarceration, and had not properly investigated or provided adequate representation. *Id.*

*Melendez* is distinguishable at the outset because its holding required that the trial court conduct a requested hearing, a complaint that we have rejected here because [Carroll] did not request a hearing. *See id.* More importantly, the egregious facts demonstrated in *Melendez* are missing here. In contrast to the "substantial complaint" in *Melendez*, the record before us demonstrates consistent, significant activity by trial counsel on [Carroll's] behalf. For example, counsel promptly sought discovery after he was appointed, and obtained relief from the trial court equally promptly. In addition, counsel obtained funds to hire an investigator, As well, counsel

19

negotiated favorable plea bargain offers from the State for far less punishment that the jury assessed, despite [Carroll's] multiple prior convictions. Further, counsel obtained a favorable ruling from the trial court by motion in limine and also sought to suppress [Carroll's] oral statements by a motion that the trial court carried with [Carroll's] case. Similarly, counsel complied with [Carroll's] request to file a motion to quash the enhancements and also requested that [Carroll] not be impeached with his prior convictions. Finally, despite his contrary assertions in his complaints made to the trial court, we note that [Carroll] acknowledged, at a pretrial hearing, having conferred "pretty often" with appointed counsel while in jail.

[Carroll] has not made an adequate showing that the trial court abused its discretion by failing to appoint substitute counsel. The record establishes that counsel met with [Carroll] in jail, counsel acquired funds for an investigator to assist with the defense, and filed multiple motions to preserve [Carroll's] rights. [Carroll's] complaints about his counsel began only about a month before trial was to begin, but [Carroll] never established that counsel had a conflict of interest, and [Carroll's] complaints did not rise to a level that would require the trial court to provide substitute counsel. Moreover, [Carroll's] pretrial complaints about Gonzalez did not continue after trial began. As emphasized above, nothing in the reporter's record of the trial proceedings shows that [Carroll] complained to the trial court or suggests that [Carroll] was dissatisfied with Gonzalez. After considering the eleventh-hour timing of [Carroll's] complaints and the substantial and significant contribution and involvement by appointed counsel, we conclude that [Carroll] has not demonstrated that the trial court abused its discretion by refusing to appoint substituted counsel.

We overrule [Carroll's] third issue.

*Carroll v. State*, No. 01-03-00444-CR at 11-16. Here, because the record shows that Gonzalez was substantially and actively involved in Carroll's defense, that Carroll cooperated in preparing and presenting the defense, that there was no conflict of interest, and that Carroll made no request for a hearing on his motion for substituted counsel, the Texas courts' rejection of these claims is not contrary to or an unreasonable application of clearly established Federal law, nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state proceedings. No relief is available on these claims under § 2254(d).

### C.     Ineffective Assistance of Appellate Counsel

In his final claim, Carroll complains that his appellate counsel was ineffective for failing to raise on appeal claims related to his trial counsel's performance and his alleged forgery of the April 2, 2003, form requesting appointed counsel.

Claims of ineffective assistance of appellate counsel are generally assessed under the same two part *Strickland* deficiency and prejudice standard as claims of ineffective assistance of trial counsel. *Williams v. Collins*, 16 F.3d 626, 635 (5th Cir.), *cert. denied*, 512 U.S. 1289 (1994).  With respect to *Strickland's* deficiency prong, "[o]n appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999); *see also Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.) ("The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal."), *cert. denied*, 493 U.S. 970 (1989).  Rather, "[a]ppellate counsel is obligated to only raise and brief those issues that are believed to have the best chance of success." *Rose*, 141 F.Supp.2d at 704-705.  "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985) (cited with approval in *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).  As for *Strickland's* prejudice prong, "[p]rejudice results if the attorney's deficient performance would likely render either the defendant's trial fundamentally unfair or the conviction and sentence unreliable." *United States v. Dovalina*, 262 F.3d 472, 474 (5th Cir. 2001).

In rejecting Carroll's ineffective assistance of appellate counsel claim, the state courts concluded that Carroll had failed "to show that his appellate counsel's conduct was deficient or that had appellate counsel raised different issues, the results of the proceedings would have been

21

different." *Ex Parte Carroll*, WR 64,311-02 at 165.  Because the claims Carroll believes his appellate

counsel should have raised on appeal are not supported by the record, and because Carroll has not

shown that the result of his appeal would have been different if all the claims raised herein were raised

on direct appeal, the Texas courts' rejection of Carroll's ineffective assistance of appellate counsel

claim is not contrary to or an unreasonable application of clearly established Federal law, nor is it

based on an unreasonable determination of the facts in light of the evidence presented.


**V.**     **Evidentiary Hearing**

Carroll has filed a Motion for an Evidentiary Hearing (Document No. 11), arguing that he is

entitled to an evidentiary hearing in this § 2254 proceeding because he was not afforded a hearing in

the state habeas proceeding despite his requests for such.

Under 28 U.S.C. § 2254(e)(2), the Court's ability to hold an evidentiary hearing is limited

as follows:

> If the applicant has failed to develop the factual basis of a claim in State court
> proceedings, the court shall not hold an evidentiary hearing on the claim unless the
> applicant shows that–
>
> (A)   the claim relies on–
>
> > (I)   a new rule of constitutional law, made retroactive to cases on
> > collateral review by the Supreme Court, that was previously
> > unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered
> > through the exercise of due diligence; and
>
> (B)   the facts underlying the claim would be sufficient to establish by clear and
> convincing evidence that but for constitutional error, no reasonable factfinder would
> have found the applicant guilty of the underlying offense.

An evidentiary hearing is not available in this proceeding.  There are no issues of fact that remain unresolved and there is no clear and convincing evidence to overcome the presumption of correctness afforded the state court's detailed factual findings.  Accordingly, Carroll's Motion for an Evidentiary Hearing (Document No. 47) is DENIED.

## VI.   **Conclusion and Order**

Based on the foregoing, and the conclusion that the Texas courts fairly and comprehensively adjudicated on the merits each of the claims Carroll raises herein, and that such adjudication was based on a reasonable application of clearly established law and a reasonable determination of the facts, it is

ORDERED that Respondent's Motion for Summary Judgment (Document No. 16) is GRANTED, Petitioner's Motion for an evidentiary Hearing (Document No. 11) is DENIED, Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) is DENIED and this § 2254 proceeding is DISMISSED WITH PREJUDICE.  It is further

ORDERED that a Certificate of Appealability is DENIED.  A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).  Where the claims have been dismissed on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or

wrong." *Id.* at 484; *Beasley v. Johnson*, 242 F.3d 248, 263 (5th Cir.), *cert. denied*, 122 S.Ct. 329 (2001).  When the claims have been dismissed on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Given the claims raised herein as well, as the reasonable rejection of Petitioner's claims by the Texas courts, the Court determines that reasonable jurists would not find the procedural rulings or the assessment of Petitioner's constitutional claims to be debatable or wrong. Therefore, Petitioner has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability will not issue.

Signed at Houston, Texas, this 17th day of December, 2008.


Frances H. Stacy
United States Magistrate Judge